**Affirm and Opinion Filed January 12, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**05-21-00322-CR**

**05-21-00324-CR**

**ANGEL FABELA PADILLA, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 219th District Court of Collin County, Texas**
**Collin County, Texas**
**Trial Court Cause Nos. 219-84016-2019 Count I, 219-84016-2019 Count II**

## MEMORANDUM OPINION
Before Justices Myers, Pedersen, III, and Garcia
Opinion by Justice Pedersen, III

A jury found appellant guilty of continuous sexual abuse of a child and of indecency with a child. The trial court assessed punishment of confinement for thirty-three years for continuous sexual abuse of a child and confinement for twenty years for indecency with a child.[1] *See* TEX. PENAL CODE ANN. §§ 21.02, 21.11(a)(1). Appellant complains in two issues that he was denied a fair trial because (1) the State failed to provide pre-trial disclosure of thirty-seven allegations of sexual abuse and

---

[1] The judgments require appellant to register as a sex offender in accordance with Chapter 62 of the Texas Code of Criminal Procedure.

(2) "the legislature has made it easier to secure convictions in child sex crimes that have the most severe punishments." We affirm the trial court's judgments.

## Background

A Collin County grand jury returned a true bill of indictment against appellant for continuous sexual abuse of a young child and for indecency with a child.

Subsequently, the State filed its pretrial "notice of intention to use evidence of prior convictions and extraneous offenses under 404(b), 609, 37.07 and 38.37." The notice listed twelve instances of "prior convictions, adjudications, extraneous offenses, and bad acts" that the State intended to introduce at trial. On April 8, 2021, the State filed an amended notice to use evidence of convictions and extraneous offenses. The amended notice listed thirteen extraneous offenses and bad acts.

Jury trial commenced on April 20, 2021. The prosecution informed the trial court of its intention to call T.V., the complainant's sister, as an "extraneous victim" pursuant to article 38.37 of the Texas Code of Criminal Procedure to testify that appellant had sexually abused her. TEX. CODE CRIM. PROC. ANN. art. 38.37. Defendant made a "prophylactic objection" to testimony other than the complainant's as "irrelevant" and stated no other grounds of objection. The State also informed the trial judge and defense counsel that the State would offer extrinsic evidence of appellant's unindicted "bad acts." Defense counsel replied: "I have no response, Your Honor."

The complainant, M.G.V., testified she was thirteen years old on the date of appellant's trial. She acknowledged appellant "pretty frequently" did "inappropriate things" to her. The first instance occurred when she was "around nine or ten" and "still living in my Plano apartment." She went to appellant's room and asked for the keys to his truck to retrieve her telephone. Appellant placed his hand on "[m]y vagina," over her clothes. The prosecutor described the "different parts of the female sexual organ," and M.G.V. stated precisely where he touched her. Appellant touched her for "a few minutes."

She testified the next incident occurred when she was eleven years old and the family was living in a house in Allen, Texas. Appellant picked her up early from school at about 2:00 p.m. There was a walkway at M.G.V.'s house. "And I was walking with my little brother, and he [appellant] had hugged me from behind." She described the positioning of appellant's arms. And "his neck was like right here and he started kissing—like kissing up on me, and that's when his hand went back down to my vagina." He touched her vagina over her clothing for a few minutes. She again testified precisely about which part of her vagina appellant touched.

M.G.V. testified of another incident. Appellant came into her room, "and that's when he like just started like, I guess, sucking on my boobs." This occurred in her bedroom. She was on her bed. He was standing. "His hand was, like—I guess near my vagina but his mouth was, like, on my boobs." He pulled her breast out from her bra and kissed it. The abuse made her feel "numb," and she ran away to a park.

She acknowledged that she "stepped out" to the park and was found by police. She was with a male teenager. She had sent a text message to him and asked if he wanted to meet her at the park. She and the boy were "just talking." Police arrived at the park about ten minutes later.

She testified she was nine years old when appellant's abuse began and eleven years old when it stopped. He touched her vagina with his hand during that period about twenty-five times. It occurred "alternate weeks I would say." He would "[t]ongue kiss" her about three times a week, which made her feel "nasty." He kissed her breast about two or three times, "He was just like sucking on them with his mouth."

The State called M.G.V.'s sister, T.V., to testify. The trial court confirmed it had conducted a hearing outside the presence of the jury and had ruled that T.V.'s testimony was admissible under article 38.37. Defense counsel stated, "And my objection to that was noted—well, hope it's—may it be noted."[2]

T.V. testified that appellant began to do "inappropriate things" with her when she was thirteen years old, in the seventh or eighth grade, and living in the Plano apartment. This occurred from the time T.V. was thirteen years old until she was eighteen or nineteen years old. She could not remember how many times it happened because "it was so common, I can't remember." She testified appellant touched "my

---

[2] Appellant does not object here to T.V.'s testimony.

–4–

breasts, and my butt, and my vagina." Appellant's conduct "lasted over a period of several years." He touched her vagina with his fingers under the clothes. After she had started high school, he also touched her vagina with his tongue. Appellant's conduct lasted for a period of several years. After M.G.V. told her about appellant's abuse, T.V. talked with appellant. T.V. told him, "if he was doing that, there would be consequences; that, you know, I wasn't going to stay quiet and he . . . brushed it off." She moved away from home and was concerned about M.G.V. being with appellant. She did not report appellant's conduct because, "I didn't want to get in trouble."

Appellant testified he was fifty-four years old at the time of the trial. He denied having committed either offense of which he was charged.

Generally, he thought M.G.V. was truthful but not after she had run away the first time. Before "this happened, everything was normal. Didn't have any problems with her." Appellant and M.G.V. were together often. He testified that M.G.V. was motivated to accuse him because "[s]he had relations with other people, not me." M.G.V. accused appellant due to her relations with the boy in the park. M.G.V. said she called the boy. "She didn't just find him casually." M.G.V. accused appellant "In order not to tell the truth. Who is this boy? Why she was in the park? And what her relationship was with him? . . . She had to have an excuse why she was outside." He did not know if she had seen the boy before the night she was found with him in the park.

Appellant's counsel asked appellant: "Now, you know you heard M.G.V. say that some of these bad actions occurred many times. She said 25 times, I guess, she mainly talked about kissing, but she talked about a lot of things that she says they are at least uncomfortable." Appellant testified, "Oh, it's a lie." Appellant testified M.G.V. had lied to police when they took her home after her first having run away. Tonya had confronted him about touching M.G.V. Appellant testified his relationship with M.G.V.'s sister, T.V., was "good." He denied "encounters" with T.V.: "No, none of that happened."

The prosecutor asked appellant:

Q: Do you remember on July 17th asking Maria [M.G.V.'s mother] about what [M.G.V.] was saying, and you and Maria agreeing that [M.G.V.] should tell law enforcement that she only did it for attention but they cannot build a case?
A: I don't remember that.
Q: You don't remember that?
A: No.
Q: You know it's recorded, right?
A: I know you have them but I don't remember exactly.
. . .
Q: Okay. Mr. Padilla, your testimony here is that [M.G.V.] is making this up. [T.V.] is making this up, and this is just a big conspiracy against you; right?
A: Yes.

The jury found appellant guilty of continuous sexual abuse of a child and of indecency of a child by contact, and the trial court ordered punishment, as noted. This appeal followed.

–6–

In his first issue, appellant complains he was denied a fair trial because the State failed to provide pre-trial notice of thirty-seven instances of sexual abuse in violation of article 38.37 of the Texas Code of Criminal Procedure. Appellant argues "that the sheer number of allegations presented at trial and not noticed 30 days before trial made it impossible to put on a defense because he was defending against allegations not in the indictment nor in the State's CCP 38.37 or TX R EVID Rule 404 disclosures." Appellant also asserts, generally, that article 38.37 infringes on the presumption of innocence, lessens the State's burden of proof, and permits the jury to assume a defendant is guilty of a charged offense simply because he may or may not have committed other similar acts.

*We reject Appellant's "notice" argument*

Appellant complains that the State did not provide pre-trial notice required by article 38.37, section 3, that it would introduce evidence that appellant touched M.G.V. every two weeks.

Extraneous-offense evidence generally is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. TEX. R. EVID. 404(b)(1). Article 38.37 of the Texas Code of Criminal Procedure provides an exception to Rule 404(b)(1) in certain prosecutions, including, as here, prosecutions under Penal Code section 21.02 for continuous sexual assault of a child and section 21.11 for indecency with a child. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, §§ 1(b), 2(b). The State shall give the

–7–

defendant thirty days' notice before trial of its intent to introduce such evidence in its case in chief. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 3.

We review a trial court's admission or exclusion of evidence for an abuse of discretion. *See Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). A trial court does not abuse its discretion if the decision to admit evidence is within the zone of reasonable disagreement. *See Mayes v. State*, No. 05-16-00490-CR, 2017 WL 2255588, at \*17 (Tex. App.—Dallas May 23, 2017, pet. ref'd) (mem. op., not designated for publication).

Appellant specifically complains about M.G.V.'s testimony on direct examination that appellant touched her, "Every year—alternate weeks I would say." M.G.V. testified:

> Q: So, [M.G.V.], you mentioned that you were about nine when it started happening, right? How old were you when it stopped happening.
> A. Eleven.
> Q: Eleven? And I know it's hard to say because you said it happened a lot right?
> A: Yes, ma'am.
> Q: Could you estimate how many times over the course of that period he touched your female sexual organ with his hand?
> A: When I was nine—nine and eleven?
> Q: Uh-huh.
> A: Twenty-five times.
>     [Defense counsel]: I can't hear.
>     The witness: Twenty-five.
>     [Defense counsel] Okay. Thank you.
> Q: [Prosecutor] How often do think it would happen?
> A: Every year—alternate weeks I would say.
> Q: Okay. And that continued throughout this course of that two-year period; right?

A: Yes, ma'am.

Based on this testimony, Appellant argues that the State did not provide notice—in violation of article 38.37, section 3—of thirty-seven alleged instances of extraneous evidence.[3] He also characterizes his complaint as the State's failing to provide notice that the complaining witness would testify that the abuse occurred once every two weeks.

Appellant failed to preserve his first issue concerning lack of notice by failing to object in the trial court to M.G.V.'s testimony. "To properly preserve an issue concerning the admission of evidence for appeal, 'a party's objection must inform the trial court why or on what basis the otherwise admissible should be excluded.'" *Favorite v. State*, No. 09-16-00162-CR, 2017 WL 2687470, at *11 (Tex. App.—Beaumont June 21, 2017, pet. ref'd) (mem. op., not designated for publication) (quoting *Ford v. State,* 305 S.W.3d 530, 533 (Tex. Crim. App. 2009)); s*ee also* TEX. R. APP. P. 33.1(a)(1)(A); TEX. R. EVID. 103(a)(1); *Martinez v. State*, 327 S.W.3d 727, 736 n.10 (Tex. Crim. App. 2010) (failure to object to lack of notice at trial waives issue on appeal); *Cathcart v. State*, No. 05-15-01176-CR, 2017 WL 34588,

---

[3] Appellant does not contend that the state provided inadequate notice other than the complained-of incidents to which M.G.V. testified. He argues, "The State may have given notice about the formal accusation and the thirteen disclosures made in their pleadings, but that still left another thirty-seven disclosures that Appellant was 'automatically entitled to.['"]

The State argues, "Appellant maintains the above testimony refers to 'not less than 52 instances of abuse. . . .' He reaches this number by figuring one act of abuse every other week for two years. From that number, he subtracts the two counts in the indictment and the 13 acts listed in the State's extraneous offense notice. He claims this leaves 37 undisclosed acts of abuse."

at *5 (Tex. App.—Dallas Jan. 4, 2017, pet. ref'd) (mem. op., not designated for publication) (complaint that state failed to give notice under article 38.37 is forfeited if not raised in the trial court); *Hulme v. State*, No. 05-15-00817-CR, 2016 WL 1403184, at *3 (Tex. App.—Dallas Apr. 17, 2016, no pet.) (mem. op., not designated for publication) (complaint that the State failed to provide notice of its intent to use article 38.37 evidence at guilt/innocence was not raised at trial and was therefore "waived").[4] The basis of appellant's first issue is the "sheer number" of allegations of which the State did not provide notice made it "impossible" to present a defense. A sister court held an appellant waived a similar complaint about lack of notice of a victim's testimony that she was assaulted "[a]bout every day." *See Diaz v. State*, No. 01-18-20216320, at *4 (Tex. App.—Houston [1st Dist.] Apr. 28, 2020, no pet.) (mem. op., not designated for publication) ("Additionally, appellant did not object when Amy testified that appellant not only assaulted her on the date Alleged in the indictment, but that he assaulted her '[a]bout every day.' The failure to object to the

---

[4] *See also Balbisi v. State*, Nos. 14-19-00798-CR, 14-19-00799-CR, 14-19-00800-CR, 2021 WL 4472540, at *4 (Tex. App.—Houston [14th Dist.] Sept. 30, 2021, no pet.) (mem. op., not designated for publication) (failure to object at trial when evidence of extraneous offenses were introduced failed to preserve any error for appeal, and this waived the issue); *Singleton v. State*, 631 S.W.3d 213, 217-18 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd) ("Here, appellant wholly failed to object to the State's purported failure to provide notice under article 38.37 and thus failed to preserve error) (citing *West v. State*, 554 S.W.3d 234, 242 (Tex. App.—Houston [14th Dist.] 2018, no pet.)); *Favorite*, 2017 WL 2687470, at *11 (citing *Belcher*, 474 S.W.3d 840, 850 (Tex. App.—Tyler 2015, no pet.) (error not preserved because appellant failed to object to admission of evidence based on the State's failure to give notice required by article 38.37)); *Campbell v. State*, No. 02-15-00018-CR, 2015 WL 10324054, at *2 n.3 (Tex. App.—Fort Worth Dec. 10, 2015, no pet.) (mem. op., not designated for publication) (failure to assert an objection at trial implicating article 38.37, section 3's notice requirement failed to preserve the issue for appellate review).

admission of the extraneous offense evidence when it was offered also waives any complaint about lack of notice of that evidence.").

Moreover, if appellant was surprised by M.G.V.'s testimony, then he could have moved for a continuance. He failed to do so, also resulting in failure to preserve his first issue. *See Lindley v. State,* 635 S.W.2d 541, 544 (Tex. Crim. App. 1982) ("[T]he defendant's failure to request a continuance at trial, when he became aware of the [extraneous-offense] evidence, waived any error urged in an appeal on the basis of surprise."); *Rodriguez v. State*, No. 10-18-00162-CR, 2019 WL 962468, at *2 (Tex. App.—Waco Feb. 27, 2019, no pet.) (mem. op., not designated for publication) ("Because Rodriguez was required to request a continuance to mitigate the effects of surprise associated with the State's purported failure to provide reasonable notice of its intent to use extraneous-offense evidence, we conclude that Rodriguez failed to preserve his complaint in this issue regarding any violation of article 38.37 of the Code of Criminal Procedure. Accordingly, we overrule Rodriguez's first issue."); *see also McDonald v. State*, 179 S.W.3d 571, 578 (Tex. Crim. App. 2005) ("Furthermore, had there been legitimate surprise that required a re-evaluation of trial strategy, the appellant could have requested a continuance.").

Assuming, without deciding, that appellant preserved error regarding lack of notice, we would reject the merits of appellant's central argument. Appellant complains there was "no way" appellant could prepare for "this onslaught of uncorroborated allegations brought at the last minute with little or no date

specificity." He asserts it was "impossible" to defend himself against allegations not in the indictment or in the State's notice of intent to introduce extrinsic evidence. We reject appellant's assertion because—as the Texas Court of Criminal Appeals and one of our sister courts have recognized—appellant could have avoided adverse effects of surprise by moving for continuance, as noted. *See Lindley*, 635 S.W.2d at 544 (noting defendant failed to request a continuance when he became aware of extraneous-offense evidence); *Rodriguez*, 2019 WL 962468, at *2 (defendant was required to request a continuance to mitigate the effects of surprise associated with the State's purported failure to provide reasonable notice, prescribed by article 38.37, of its intent to use extraneous-offense evidence); *see also McDonald*, 179 S.W.3d at 578 (had there been legitimate surprise that required a re-evaluation of trial strategy, appellant could have requested a continuance). Appellant's complaint that he had "no way" of preparing a defense or that a defense was "impossible" due to lack of notice is without merit.

However, assuming, without deciding, that appellant preserved error regarding lack of notice and that the admission of the evidence was erroneous, we would overrule appellant's first issue because any error was harmless. "The admission of extraneous offense evidence without proper notice is non-constitutional error subject to a harm analysis under Texas Rule of Appellate Procedure 44.2(b)." *Martines v. State*, 371 S.W.3d 232, 249 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (mem. op., not designated for publication); *see also* TEX.

–12–

R. App. P. 44.2(b). We disregard any error that does not affect appellant's substantial rights. *See McDonald*, 179 S.W.3d at 578; *Martines*, 371 S.W.3d at 249. We will not reverse a conviction when, after examining the record as a whole, we have a fair assurance that the error did not influence the jury or had but a slight effect. *See McDonald*, 179 S.W.3d at 578. We look only at the harm that may have been caused by the lack of notice and the effect the lack of notice had on the appellant's ability to mount an adequate defense. *See Martines*, 371 S.W.3d at 249-50. Generally, error is harmless if very similar evidence is admitted without objection. *See Estrada v. State*, 313 S.W.3d 274, 302 n.29 (Tex. Crim. App. 2010); *Leday v. State*, 983 S.W.2d 713, 717 (Tex. Crim. App. 1998) ("It is well established that the improper admission of evidence does not constitute reversible error if the same facts are shown by other evidence which is not challenged.").

First, any error in allowing M.G.V.'s testimony was harmless because very similar evidence was admitted without objection. Appellant complains that he received no notice of M.G.V.'s testimony "that it happened 'Every year—alternate weeks I would say'. 3 RR 187." However, M.G.V. testified later in the proceeding:

> Q: And then the abuse was ongoing you said I think every other week between when it started and when it ended, right?
>
> A: Yes, ma'am.

Appellant failed to object to this testimony, which is very similar to her earlier testimony of which appellant complains. M.G.V. also acknowledged, without

objection, that "it happened pretty frequently that he would do something bad to you?" Due to the very similar and unobjected-to testimony that the abuse occurred "every other week," the testimony of which appellant complains is harmless. *See Estrada*, 313 S.W.3d at 302 n.29; *Leday*, 983 S.W.2d at 717 (improper admission of evidence does not constitute reversible error if the same facts are shown by other evidence that is not challenged).

Second, appellant's basic defensive strategy was to (1) deny that he committed any of the acts with which he was charged and (2) convince the jury that M.G.V. had lied about appellee's conduct. Appellant does not argue that his defensive strategy would have changed had the State provided the notice of M.G.V.'s testimony. Given the nature of appellant's defense strategy and his cross-examination of M.G.V., "It is hard to imagine that [appellant's] defense would have been altered in any meaningful way" had he received greater notice of M.G.V.'s testimony that appellant touched her alternate weeks. *See Martines*, 371 S.W.3d at 250 (quoting *McDonald*, 179 S.W.3d at 578-79). We conclude that the error did not influence the jury or had but slight effect. *See Martines*, 371 S.W.3d at 250.

*We reject appellant's additional generalized attack on article 38.37*

We reject appellant's additional, brief, and general assertions attacking article 38.37. He asserts article 38.37 infringes on the presumption of innocence, lessens the State's burden of proof, and permits the jury to assume the defendant is guilty of

the charged offense simply because he may or may not have committed other similar acts.

First, the record shows appellant did not raise these complaints about article 38.37 in the trial court. *See* TEX. R. APP. P. 33.1(a); *Ieppart v. State*, 908 S.W.2d 217, 219 (Tex. Crim. App. 1995) ("legal rights, even those assured by due process are usually forfeitable by inaction"); *Mayes v. State*, No. 05-16-00490-CR, 2017 WL 2255588, at *18 (Tex. App.—Dallas May 23, 2017, pet. ref'd) (mem. op., not designated for publication) (constitutional complaint to article 38.37 not preserved for appellate review due to failure to assert complaint at trial court). Appellant has failed to preserve his additional complaints about article 38.37.

Second, even if appellant had not waived these complaints concerning article 38.37, we would reject them. This Court and our sister courts repeatedly have rejected the complaints appellant attempts to raise here. *See Strickland v. State*, Nos. 05-18-00170-CR, 05-18-00171-CR, 2019 WL 2402983, at *3 (Tex. App.—Dallas June 7, 2019, no pet.) (mem. op., not designated for publication) (rejecting argument that article 38.37, section 2's, "revers[ing] the historic practice of excluding character propensity evidence" as unconstitutional and citing seven opinions); *Gonzalez v. State*, No. 05-17-1292502, at *9 (Tex. App.—Dallas Mar. 21, 2019, pet. ref'd) (mem. op., not designated for publication) (rejecting similar constitutional complaint and citing seven opinions in support of the statement that "Our sister courts have also uniformly held that the statute is constitutional . . . ."); *Coburn v.*

–15–

*State*, No. 05-17-00819-CR, 2018 WL 3424364, at *9 (Tex. App.—Dallas July 16, 2018, no pet.) (mem. op., not designated for publication) (rejecting similar constitutional complaint and citing fifteen opinions by twelve Texas courts of appeals); *Mayes*, 2017 WL 2255588, at *18-20 (overruling complaint that article 38.37, section 2, is unconstitutional although it authorizes, in certain circumstances, introduction of propensity evidence); *Fronek v. State*, No. 05-14–1118-CR, 2016 WL 314423, at *3-5 (Tex. App.—Dallas June 6, 2016, pet. ref'd) (mem. op., not designated for publication) (holding that article 38.37 did not unconstitutionally reduce the state's burden of proof on the charged offense, degrade the presumption of innocence, or authorize, in certain circumstances, introduction of propensity evidence).

Because (1) we and our sister courts have previously determined that article 38.37 is not unconstitutional, (2) there has been no change in the law, (3) appellant does not distinguish his case from opinions that have rejected his argument, and (4) appellant makes no arguments that would compel a different conclusion from that reached in previous opinions, we decline appellant's invitation to revisit the issue or to hold differently in this case. *See Gonzalez*, 2019 WL 1292502, at *9 (following this Court's precedent that article 38.37 is constitutional and observing that we may not overrule a prior panel decision of this Court absent an intervening change in the law by the legislature, a higher court, or this Court sitting en banc); *Strickland*, 2019 WL 2402983, at *3 (noting appellant there, as here, did not distinguish his case from

prior authority holding article 38.37 constitutional); *Coburn*, 2018 WL 3424364, at

*9 (noting appellant there, as here, raised no arguments regarding the

constitutionality of article 38.37 that would compel a different conclusion from that

reached in our prior opinions). Appellant has failed to carry his burden to

demonstrate that article 38.37 is unconstitutional. *Strickland*, 2019 WL 2402983, at

*3 (appellant failed to carry burden to show unconstitutionality of article 38.37).

We overrule appellant's first issue.

### *Appellant fails to demonstrate that article 38.07 denied him a fair trial*

In his second issue, appellant complains article 38.07 of the Texas Code of

Criminal Procedure degrades the State's burden to produce evidence of guilt beyond

a reasonable doubt. *See* TEX. CODE CRIM. PROC. ANN. ART. 38.07.[5] Appellant

complains:

> The one witness rule in child sex crimes (Art. 38.07) in Texas absolves
> the State from any need of corroborating or eyewitness testimony has
> eroded the right to a fair trial in these cases. The draconian punishments
> should at very least require that a criminal defendant be allowed the

---

[5] Article 38.07 provides:

    (a) A conviction under Chapter 21 . . . is supportable on the uncorroborated testimony of
        the victim of the sexual offense if the victim informed any person, other than the
        defendant, of the alleged offense within one year after the date on which the offense is
        alleged to have occurred.

    (b) The requirement that the victim inform another person of an alleged offense does not
        apply if at the time of the alleged offense the victim was a person:

        (1) 17 years of age or younger . . . .

TEX. CODE CRIM. PROC. ANN. art. 38.07.

–17–

opportunity to defend himself. As implemented, all a victim need do is say something . . . anything really, and a factfinder has enough evidence to convict.[6]

The State argues that appellant failed to preserve his complaint for appellate review.

Generally, a complaint must be made to the trial court by a timely request, objection, or motion. TEX. R. APP. P. 33.1. Complaints regarding the constitutionality of criminal states are not exempt from this rule. *See Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009). A defendant may not raise a facial challenge to the constitutionality of a statute for the first time on appeal. *Id.* An "as applied" constitutional claim is also subject to the preservation requirement and must be presented at the trial court level to preserve error. *See Jaykus v. State*, No. 05-13-01497-CR, 2014 WL 3339544, at *2 (Tex. App.—Dallas July 8, 2014, no pet.) (mem. op., not designated for publication) (citing *Curry v. State*, 910 S.W.2d 490, 496 (Tex. Crim. App. 1995)). In this case, the record contains no evidence that appellant raised at trial either a facial challenge or an as-applied challenge to article 38.37 in the trial court. Accordingly, he has failed to preserve his second issue for appellate review. *See Karenev*, 281 S.W.3d at 434; *Jaykus*, 2014 WL 3339544, at *2; *Minter v. State*, 570 S.W.3d 941, 943-44 (Tex. App.—Texarkana 2019, no pet.) (overruling—due to failure to preserve complaint at trial court—argument that

---

[6] We construe appellant's second issue as attempting to address the constitutionality of article 38.07 and not as attacking the sufficiency of the evidence.

–18–

article 38.07 was unconstitutional because admission of uncorroborated testimony under 38.07 violates due process and denies fair trial).

Even had appellant not waived the issue, we would conclude he fails to carry his burden to demonstrate the unconstitutionality of article 38.07. When confronted with an attack on the constitutionality of a statute, we presume that the statute is valid. *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002). The burden rests upon the individual attacking the statute to establish that it is unconstitutional. *Id.* A party raising a facial challenge to the constitutionality of the statute must demonstrate that the statute operates unconstitutionally in all of its applications. *See Gillenwaters v. State*, 205 S.W.3d 534, 536 n.2 (Tex. Crim. App. 2006). A claim that a statute is unconstitutional "as applied" asserts that the statute, although generally constitutional, operates unconstitutionally in specific circumstances. *See Id.* at 535 n.3.

Appellant fails to carry his burden to demonstrate the unconstitutionality of article 38.07 because his cited authorities do not support his argument. In *Carmell v. Texas*, 529 U.S. 513 (2000), the U.S. Supreme Court considered whether application of amended article 38.07 offended the prohibition against state ex post facto laws, id. at 516, 552-53 (convictions for offenses committed before effective date of amended article 38.07—allowing conviction for certain sexual offenses on uncorroborated testimony of child victim—violated the prohibition against ex post facto laws because convictions rested on uncorroborated testimony). The last

–19–

amendment of article 38.07 took effect September 1, 2011. *See* Acts 2001, 82d Leg., ch. 1 (S.B. 24), § 2.05, eff. Sept. 1, 2011. Appellant was indicted for acts committed in 2017, 2018, and 2019. Thus, the prohibition of ex post facto laws addressed in *Carmell* is inapplicable here.

The remaining opinions to which appellant cites do not address the constitutionality of article 38.07. *See Martinez v. State*, 178 S.W.3d 806, 812-14 (Tex. Crim. App. 2005) (cited by appellant for court's general description of appropriate scope and application of articles 38.07 and 38.072), *Ryder v. State*, 514 S.W.3d 391, 396 (Tex. App.—Amarillo 2017, pet. ref'd) (cited by appellant for latitude given by courts to testimony of unsophisticated child victims of sexual abuse), *Bowers v. State*, 914 S.W.2d 213, 216 (Tex. App.—El Paso 1996, pet. ref'd) (cited by appellant for court's description of a previous version of article 38.07 and its purpose as applied to trials for rape and holding application of 1993 version of article 38.07, which was not in effect at the time of the alleged crime, violated the *ex post facto* prohibition), and *Brown v. State*, 649 S.W.2d 160, 162 n.2 (Tex. App.—Austin 1983, no pet.) (noting the object of article 38.07 is the liberalizing of onerous evidentiary requirements of proof in sexual attack cases).

Appellant failed to preserve argument that article 38.07 is unconstitutional. Moreover, he fails to carry his burden to demonstrate article 38.07 is unconstitutional and denied him a fair trial. *See Reed*, 991 S.W.2d at 361 (noting burden and holding article 38.07 is not unconstitutional due to alleged irrational and arbitrary statutory

presumption that a witness under the age of fourteen is more credible than a witness fourteen or older). Appellant's argument is without legal basis.

We overrule appellant's second issue.

### *Conclusion*

We affirm the trial court's judgments.


220322f.u05
220324f.u05                                    /Bill Pedersen, III/
Do Not Publish                                 BILL PEDERSEN, III
TEX. R. APP. P. 47.2(b)                        JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ANGEL FABELA PADILLA,
Appellant

No. 05-21-00322-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 219th Judicial District Court, Collin County, Texas Trial Court Cause No. 219-84016-2019 Count 1.
Opinion delivered by Justice Pedersen, III. Justices Myers and Garcia participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 12th day of January, 2023.



## Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

ANGEL FABELA PADILLA,
Appellant

No. 05-21-00324-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 219th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 219-84016-
2019 Count 2.
Opinion delivered by Justice
Pedersen, III. Justices Myers and
Garcia participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered this 12ᵗʰ day of January, 2023.